UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PROTEGRITY CORPORATION,          :

     Plaintiff,                 :

v.                               :   CASE NO. 3:10-cv-755(RNC)

VOLTAGE SECURITY, INC.,          :

     Defendant.                 :

RULING AND ORDER

    Plaintiff Protegrity Corporation holds U.S. Patent Nos.
6,321,201 (the "'201 patent"), 6,963,980 (the "'980 patent") and
7,325,129 (the "'129 patent"), which generally cover methods,
systems and apparatuses for encrypting electronic data.
Protegrity claims that its patents are infringed by products sold
by defendant Voltage Security, Inc. and it seeks to recover
compensatory damages from Voltage in the form of lost profits.
Voltage has moved for summary judgment of no lost profits arguing
that even if infringement can be established, Protegrity cannot
sustain its burden of proving that it has lost sales to Voltage.
Protegrity opposes Voltage's motion for summary judgment on the
merits and also asks the Court to defer ruling on the motion
pending a deposition of Voltage, which Protegrity has moved to
compel and as to which Voltage has filed a motion for a
protective order.  For reasons set forth below, Protegrity's
request to postpone consideration of Voltage's motion for summary
judgment is denied, Protegrity's motion to compel is denied,
Voltage's motion for a protective order is granted, and Voltage's

motion for summary judgment of no lost profits is granted.

Summary judgment may be granted under Fed. R. Civ. P. 56(a) when the nonmovant fails to present evidence sufficient to establish an essential element of its case on which it will bear the burden of proof at trial.  Novartis Corp. v. Ben Venue Labs., Inc., 271 F.3d 1043, 1046 (Fed. Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  Under Fed. R. Civ. P. 56(d), a party opposing a motion for summary judgment may request that consideration of the motion be postponed pending discovery. In that event, the party must submit an affidavit "describing (i) the information sought and how it will be obtained; (ii) how it is reasonably expected to raise a genuine issue of material fact; (iii) prior efforts to obtain the information; and (iv) why those efforts were unsuccessful."  Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 139, 167 (2d Cir. 2003), rev'd on other grounds, 544 U.S. 197 (2005).

Protegrity seeks to postpone consideration of Voltage's motion for summary judgment under Fed. R. Civ. P. 56(d) pending a deposition of Voltage on issues relating to lost profits. Voltage opposes Protegrity's request for a postponement on the grounds that Protegrity has not identified the information it hopes to obtain, nor shown how the information will raise a genuine issue of material fact regarding Protegrity's claim for lost profits.  I agree with Voltage that Protegrity's request for

a postponement is deficient on these grounds.  The discovery
Protegrity seeks relates to sales by Voltage.  In contrast, the
factors on which Voltage has based its motion for summary
judgment of no lost profits concern demand for Protegrity's
product and the availability of acceptable non-infringing
alternatives from third parties.

In addition, Voltage urges that Protegrity's Rule 30(b)(6)
deposition notice relating to lost profits was untimely.  I
agree.  The notice lists twenty-six broad topics, twenty-two of
which relate generally to lost profits.  Protegrity served this
notice on November 12, 2012, just four days before the close of
fact discovery.  Voltage's office is in California, and the
deposition of its representative was noticed for Connecticut on
November 16, the cut-off date for fact discovery.

Discovery requests have to be made sufficiently in advance
of the discovery deadline to allow reasonable time for a response
prior to the discovery cut-off date.  "Discovery requests which
are served too late in the discovery period to allow for a timely
response, have been disallowed."  Brockway v. VA Conn. Healthcare
Sys., No. 3:10-CV-719 (CSH), 2011 WL 1459592, at *3 (D. Conn.
Apr. 15, 2011) (four days' notice of deposition rendered
subpoenas unduly burdensome).  Protegrity's 30(b)(6) notice must
be disallowed on this basis.

Protegrity suggests that an extension of the discovery

period should be granted to enable it to conduct the 30(b)(6) deposition.  An extension of the discovery period requires a showing of good cause.  <u>See</u> Fed. R. Civ. P. 16(b)(4).  The good cause standard requires Protegrity to show that the deadline for completing discovery could not reasonably be met despite due diligence.  This showing has not been made.  In the absence of the required showing, allowing Protegrity to take the 30(b)(6) deposition would "impermissibly extend the discovery period." <u>See</u> <u>Gavenda v. Orleans Cnty.</u>, 182 F.R.D. 17, 20 (W.D.N.Y. 1997) (granting protective order when document requests were made two days before end of fact discovery because requiring disclosure would "impermissibly extend the discovery period" (citing cases)).  Accordingly, Protegrity's motion to compel is denied, Voltage's motion for a protective order is granted, and Protegrity's request for a postponement under Fed. R. Civ. P. 56(d) is denied.

Turning to the merits of Voltage's motion for summary judgment, the amount of patent infringement damages, including lost profits, is a question of fact.  <u>Smithkline Diagnostics, Inc. v. Helena Labs. Corp.</u>, 926 F.2d 1161, 1164 (Fed Cir. 1991). Protegrity has the burden of proving lost profits by a preponderance of the evidence.  <u>Id.</u>  Lost profits are established by proving what profits would have been made by the patentee but for the infringement.  <u>Rite-Hart Corp. v. Kelley Co.</u>, 56 F.3d

4

1538, 1545 (Fed. Cir. 1995)(en banc); BIC Leisure Prods., Inc. v.
Windsurfing Int'l, Inc., 1 F.3d 1214, 1218 (Fed. Cir. 1993).  The
patentee must "show a reasonable probability that, 'but for' the
infringement, it would have made the sales that were made by the
infringer."  Rite-Hite, 56 F.3d at 1545 ("[H]ad the Infringer not
infringed, what would the Patent Holder-Licensee have made?"
(quoting Aro Mfg. Co. v. Convertible Top Replacement Co., 377
U.S. 476, 507 (1964))).

   Damages for lost profits in patent infringement cases
usually are determined using the Panduit test.  See Rite-Hite, 56
F.3d at 1545 (citing Panduit Corp. v. Stahlin Bros. Fibre Works,
Inc., 575 F.2d 1152, 1156 (6th Cir. 1978)).  Under this test,
Protegrity has the burden of establishing (1) the demand for the
patented product, (2) the absence of acceptable non-infringing
substitutes, (3) Protegrity's manufacturing and marketing
capability to exploit the demand, and (4) the amount of profit it
would have made.  Id.  Protegrity does not argue that it can
prove lost profits in some manner other than through the Panduit
test.  Accordingly, if Protegrity is unable to prove lost profits
in accordance with the Panduit factors, summary judgment of no
lost profits is appropriate.  See Kearns, 32 F.3d at 1551-52
(summary judgment of no lost profits is appropriate when patentee
fails to prove the Panduit factors).

   In moving for summary judgment, Voltage contends that

Protegrity lacks evidence to sustain its burden under the first two Panduit factors.  After considering the parties' arguments with regard to the '201 patent, I conclude that Protegrity has failed to show the existence of a genuine issue of material fact with regard to a lack of commercially acceptable non-infringing substitutes, as required by the second Panduit factor, and that summary judgment of no lost profits relating to the '201 patent should therefore be granted.[1]

Protegrity's expert testified at his deposition that he had made no attempt to determine whether there is a lack of commercially acceptable alternatives that do not infringe the '201 patent.  When questioned on this topic at his deposition, he acknowledged that acceptable non-infringing alternatives may be available from a third party, RSA.  Protegrity's deposition of Voltage's customer, AT&T, shows that AT&T believes it has the option of using a product made by RSA.  Voltage submits that products sold by two other third parties, Ingrian/SafeNet and nuBridges, also provide non-infringing alternatives.  Protegrity sued these two parties for infringement but those actions have been settled.

Protegrity concedes that its expert did not consider whether

---

[1]  This conclusion makes it unnecessary to analyze Voltage's alternative arguments concerning demand for the patented product and whether profits from Protegrity USA, Inc. will inexorably flow to Protegrity.

there are acceptable non-infringing alternatives.  This is a significant concession, as it is Protegrity's burden under the Panduit test to prove a lack of such alternatives.  In the absence of expert testimony supporting Protegrity's claim, summary judgment is appropriate.  See Zygo Corp. v. Wyko Corp., 79 F.3d 1563, 1571 (Fed. Cir. 1996) (vacating and remanding for additional findings on lost profits because the evidence relied upon to show no non-infringing substitutes was too sparse to satisfy the plaintiff's burden); Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp., 103 F. Supp. 2d 268, 285 (S.D.N.Y. 2000) (excluding expert's opinion on lost profits prior to trial in part because patentee's expert "did not discuss, and apparently never considered, the commercial acceptability of non-infringing substitutes").

Voltage's motion for summary judgment is further supported by the evidence indicating that an acceptable non-infringing alternative is available from RSA.  Protegrity does not address this evidence directly.  Instead, it argues that a patentee should not have to sue all competitors in order to be able to recover lost profits.  I agree that the law does not require Protegrity to sue every competitor before seeking lost profits from one.  But Protegrity does have the burden of establishing the absence of acceptable non-infringing alternatives, and sales of an acceptable non-infringing alternative can suffice to defeat

a claim for lost profits.  See Grain Processing Corp. v. Am. Maize-Prods. Co., 185 F.3d 1342, 1352 (Fed. Cir. 1999).  Voltage has shown that an acceptable non-infringing substitute is available from RSA.  Because Protegrity identifies no evidence to the contrary, summary judgment is appropriate.

The conclusion that summary judgment of no lost profits should be granted with regard to the '201 patent is bolstered by the undisputed fact that Ingrian/Safenet and nuBridges offer commercially acceptable alternatives.  To satisfy its burden under the Panduit test, Protegrity must present evidence that these concededly acceptable substitutes infringe the '201 patent.  See Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1222-23 (Fed. Cir. 1995).  Protegrity maintains that the products do infringe but it presents no such evidence in response to Voltage's motion and apparently has no intention of offering such evidence at trial.[2]  In the absence of such evidence, Protegrity cannot recover lost profits relating to the '201 patent.

Voltage's motion of no lost profits with regard to the '980 and '129 Patents requires little additional discussion.  Protegrity's damages expert limited his lost profits analysis to the '201 patent and did not address lost profits relating to the '980 or '129 patents.  Protegrity admits in its Local Rule 56

---

[2]  Voltage states that Protegrity has refused requests to disclose its infringement theories against Ingrian/Safenet and nuBridges.

Statement that its expert "express[ed] no opinion that Protegrity has lost profits due to Voltage's alleged infringement of the '980 or '129 patents."  Because Protegrity lacks expert testimony establishing a basis for recovery of lost profits under the Panduit test with regard to the '980 and '129 patents, summary judgment is proper.

Accordingly, Voltage's motion for summary judgment of no lost profits is hereby granted.

So ordered this 31st day of December, 2013.


_____/s/ RNC_____
Robert N. Chatigny, U.S.D.J.